**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    NATIONAL SURETY CORPORATION,              No. C-09-4898 EMC

9              Plaintiff,

10        v.                                   **ORDER GRANTING THIRD PARTY
                                               DEFENDANT'S MOTION TO DISMISS**
11   PACIFIC INTERNATIONAL VEGETABLE
     MARKETING, INC.,                          **(Docket No. 19)**
12
               Defendant.
13
     _____/
14

15

16        Plaintiff National Surety Corporation ("NSC") initiated this lawsuit against Defendant

17   Pacific International Vegetable Marketing, Inc. ("PIM").  Thereafter, PIM asserted a counterclaim

18   against NSC and a third-party complaint against TWIW Insurance Services, LLC.  Currently

19   pending before the Court is TWIW's motion to dismiss some but not all of the claims asserted in

20   PIM's third-party complaint.  Having considered the parties' briefs and accompanying submissions,

21   as well as the oral argument of counsel, the Court hereby **GRANTS** TWIW's motion.

22                  **I.    FACTUAL & PROCEDURAL BACKGROUND**

23        In its third-party complaint, PIM alleges as follows.

24        On or about March 1, 2005, PIM entered into an Agricultural Marketing Agreement with

25   A&A Farming.  Under the Agreement, A&A hired PIM as its marketing agent for the sale of its

26   crop.  *See* Compl. ¶ 6; Compl., Ex. A (Agreement ¶ 2).  The Agreement obligated A&A (1) to

27   maintain comprehensive public liability insurance, including product liability insurance, with certain

28   limits and (2) to name PIM as an additional insured under the insurance policies.  *See* Compl. ¶ 7;

United States District Court

For the Northern District of California

*see also* Compl., Ex. A (Agreement ¶ 13) (providing that "Grower shall furnish to Shipper a current certificate of insurance . . . evidencing that Grower has . . . comprehensive general public liability, including product liability, . . . Insurance throughout the time period of this contract with the following limits and naming Shipper as an additional insured").

To effect its obligations under the Agreement, A&A directed TWIW – which is an agent authorized to sell insurance for and on behalf of NSC – to take all necessary steps to add PIM as an additional insured to the insurance policy issued by NSC to A&A.  *See* Compl. ¶¶ 3, 8.  TWIW subsequently delivered to PIM a Certificate of Liability Insurance, indicating that PIM was added to the NSC policy as an additional insured.  *See* Compl. ¶ 8 & Ex. B.

Thereafter, in June 2006, several patrons of a Wendy's restaurant in Ogden, Utah, became ill. It was later determined that the patrons had become sick as a result of contaminated lettuce grown by A&A and provided to Wendy's by PIM.  *See* Compl. ¶ 9.

In August 2006, some of the patrons filed suit against Wendy's.  Wendy's then filed a third-party complaint against PIM.  *See* Compl. ¶ 11.  Beginning in October 2006, PIM tendered the defense of the claims to NSC on multiple occasions.  NSC finally accepted the tender of defense in May 2007.  *See* Compl. ¶¶ 12-13.  However, a few months later, in October 2007, NSC advised PIM that it had reconsidered its position, based primarily on its conclusion that PIM was not appropriately named as an insured or additional insured under the policy.  *See* Compl. ¶ 15.  In 2008, additional lawsuits were filed based on the same underlying events, and, although PIM tendered the defenses of these claims as well to NSC, NSC refused.  *See* Compl. ¶¶ 16-17.

Based on the above allegations, PIM has filed a third-party complaint against TWIW for its failure to obtain additional insured status for PIM on the NSC insurance policy.  PIM has filed suit not only on its own behalf but also as assignee of any claim A&A may have against TWIW.  *See* Compl. ¶ 20 (alleging that A&A transferred and assigned to PIM of A&A's "rights, title and interest in and to all causes of action A&A had or may have had against TWIW for TWIW's failure to secure the requisite endorsements naming PIM as an additional insured").  The following causes of action are asserted in the complaint: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) breach of fiduciary duty and "Other Tort Duties" (apparently, negligence,

1  misrepresentation, and breach of warranty).  In the currently pending motion, TWIW argues that the

2  claims for misrepresentation, breach of fiduciary duty, and breach of warranty should be dismissed.

3                                          **II.   DISCUSSION**

4  A.     Misrepresentation

5         In its third-party complaint, PIM asserts claims for both negligent and intentional

6  misrepresentation.  TWIW argues that the misrepresentation claims should be dismissed because (1)

7  PIM has failed to allege with specificity the particulars about the misrepresentation (*i.e.*, the who,

8  when, and where) and (2) PIM has failed to allege that TWIW knew that its representation was false

9  at the time that it made the representation.

10        1.     Specificity

11        The parties agree that Federal Rule of Civil Procedure 9(b) governs the misrepresentation

12 claim.  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the

13 circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has explained

14 that

15              Rule 9(b) demands that, when averments of fraud are made, the
               circumstances constituting the alleged fraud "be 'specific enough to
16              give defendants notice of the particular misconduct . . . so that they
               can defend against the charge and not just deny that they have done
17              anything wrong.'"  Averments of fraud must be accompanied by 'the
               who, what, when, where, and how' of the misconduct charged.
18

19 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

20        The Court agrees with PIM that it has alleged with specificity at least one misrepresentation

21 based on an exhibit that is attached to its third-party complaint – *i.e.*, the Certificate of Liability

22 Insurance that TWIW delivered to PIM.  *See* Compl. ¶ 8 & Ex. B (Certificate of Liability Insurance).

23 But this singular misrepresentation seems to have made to PIM alone, and not to A&A.  *See* Compl.

24 ¶ 8 (alleging that the Certificate of Liability Insurance was delivered to PIM); *see also* Opp'n at 3

25 (arguing that the document "shows that Ms. Shiflet of TWIW sent the Certificate of Insurance to

26 PIM in Salinas, California").  Therefore, to the extent the misrepresentation claims are based on

27 misrepresentations made to A&A, and not PIM, there is a lack of specificity.  In addition, the Court

28 notes that, as pled, the complaint seems to reference more than just one misrepresentation.  *See*

1  Compl. ¶¶ 35-36.  At the hearing, however, PIM conceded that the above constituted the sole

2  misrepresentation.  This too needs to be clarified as the existing complaint lacks specificity.  The

3  Court therefore dismisses without prejudice the misrepresentation claims.

4        2.    <u>Knowledge of Falsity at Time Misrepresentation Made</u>

5        As for the misrepresentations claims based on the sole alleged misrepresentation made to

6  PIM, the Court dismisses without prejudice for an additional reason.  As TWIW argues, PIM has

7  failed to allege that TWIW knew that its representations were false at the time they were made.  *See*

8  Cal. Civ. Code § 1710 (defining deceit as, *inter alia*, "[t]he suggestion, as a fact, of that which is not

9  true, by one who does not believe it to be true" and "[t]he assertion, as a fact, of that which is not

10  true, by one who has no reasonable ground for believing it to be true").  PIM does not dispute that a

11  claim for misrepresentation requires knowledge of falsity at the time of the misrepresentation.  Its

12  only contention is that it has satisfied this requirement by alleging that TWIW "misrepresent[ed] to

13  A&A and PIM that PIM had insurance when it did not."  Compl. ¶ 35.  Even if all reasonable

14  inferences are to be made in PIM's favor and the claim for negligent misrepresentation only requires

15  that TWIW should have known the representation was false, the allegations do not give rise to a

16  reasonable inference that TWIW knew or should have known at the time of its representations that

17  PIM was not in fact insured.

18  B.    <u>Breach of Fiduciary Duty</u>

19        In its third-party complaint, PIM seems to assert a claim for breach of fiduciary duty based

20  on TWIW's failure to obtain for A&A and PIM the additional insured status for PIM.  In its motion

21  to dismiss, TWIW argues that PIM has failed to state a claim for relief for breach of fiduciary duty

22  (whether on behalf of itself or on behalf of A&A) because "California law has not clearly held that

23  an insurance broker-insured relationship establishes a fiduciary duty."  Mot. at 5.  TWIW relies

24  primarily on *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th

25  1145 (2004), in support of its argument.

26        As TWIW points out, in *Hydro-Mill*, the state appellate court did state that "it is unclear

27  whether a fiduciary relationship exists between an insurance broker and an insured."  *Id.* at 1156.

28  But, as Judge White of this District has noted, the *Hydro-Mill* court never held "as a matter of law

**United States District Court**
For the Northern District of California

1  that insurance brokers never owe a fiduciary duty to their clients." *Shemano-Krupp v. Mutual of*

2  *Omaha Ins. Co.*, No. C 05-04693 JSW, 2008 U.S. Dist. LEXIS 70097, at *22 (N.D. Cal. Sept. 15,

3  2008). In fact, Judge White noted that, "in *Steadman v. McConnell*, 149 Cal. App. 2d 334, 338

4  (1957), the court held that where an insurance agent was an expert in the field and the insured was a

5  layman, there was a fiduciary relationship between the insurance agent and the insured." *Id.* The

6  Court therefore rejects TWIW's position to the extent it argues that there may never be a cause of

7  action for breach of fiduciary duty where a broker and insured are involved.

8         Nevertheless, both parties acknowledged at the hearing that there are no reported cases in

9  California finding a fiduciary duty owed by an insurance agent to an insured who is not a consumer

10 who presumably lacks expertise. The cases that have found such a fiduciary duty (not involving,

11 *e.g.,* handling of funds) all involve relatively unsophisticated insureds. Finding a fiduciary duty in

12 those circumstances comports with the general purpose in imposing fiduciary obligations -- where

13 the fiduciary is in a superior position and can easily take advantage of the other party. *See City of*

14 *Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008) (indicating that "fiduciary

15 obligations . . . generally come into play when one party's vulnerability is so substantial as to give

16 rise to equitable concerns underlying the protection afforded by the law governing fiduciaries"). As

17 pled in PIM's third-party complaint, the claim should be dismissed because there are insufficient

18 allegations that a fiduciary relationship existed between A&A/PIM and TWIW. There are no

19 allegations, for example, that, similar to *Steadman*, A&A/PIM were unsophisticated business entities

20 who were vulnerable to TWIW. The Court therefore dismisses without prejudice the claim for

21 breach of fiduciary duty. The Court notes that this ruling has no effect on any claim for, *e.g.*,

22 professional negligence. *Cf. Hydro-Mill*, 115 Cal. App. 4th at 1157-58 (noting that "[i]t is not clear

23 in what respect the fiduciary duty owed by an independent insurance agent differs from the duty of

24 due (reasonable) care" -- *i.e.*, the duty "to use reasonable care, diligence, and judgment in procuring

25 the insurance requested by its client").

26 C.     Breach of Warranty

27         In its third-party complaint, PIM did refer to an alleged tort committed by TWIW consisting

28 of a breach of warranty. In its opposition brief, PIM has clarified that it does not object to dismissal

**United States District Court**
For the Northern District of California

1  of the claim for breach of warranty "as used in the traditional, commercial sense" such as "warranty

2  of a product." Opp'n at 6. PIM explains that it meant to use the phrase "breach of warranty" only in

3  context with its claims for, *e.g.*, misrepresentation. Because PIM has effectively stated that the

4  breach-of-warranty claim is not independent of its claims for misrepresentation, and the Court has

5  dismissed the misrepresentation claims, this claim is also dismissed.

6  **III.   CONCLUSION**

7  For the foregoing reasons, TWIW's motion to dismiss is granted. The claims for

8  misrepresentation (including the breach-of-warranty claim) and the claim for fiduciary duty are

9  dismissed without prejudice. Because PIM has stated that, at this juncture, it does not intend to

10  amend its complaint, the Court orders that TWIW respond to the complaint by March 23, 2010.

11  This ruling does not bar PIM from subsequently seeking leave to reassert a claim for

12  misrepresentation or breach of fiduciary duty so long as it has a Rule 11 basis for believing that

13  there is a factual basis for any such claim. In addition, this ruling does not bar PIM from exploring

14  in discovery whether there was negligence on the part of TWIW in allegedly failing to obtain the

15  insurance requested.

16  This order disposes of Docket No. 19.

17

18  IT IS SO ORDERED.

19

20  Dated: March 5, 2010

21  _____

22  EDWARD M. CHEN
    United States Magistrate Judge

23

24

25

26

27

28

6